[Crim. No. 1577.   Fourth Dist.   Dec. 1, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH LOPEZ SANCHEZ, Defendant and Appellant.

618

Joseph Lopez Sanchez, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, S. Clark Moore, Deputy Attorney General, and William O. Mackey, District Attorney, for Plaintiff and Respondent.

SHEPARD, J.—This is an appeal by defendant Joseph Lopez Sanchez from a judgment of conviction of violation of Penal Code section 182 (conspiracy to furnish narcotic, marijuana, to a minor) and violation of Health and Safety Code section 11530 (possession of marijuana). Codefendants Richard Lee Swanson, Antonio Macias Meza and Tom Miranda

Moreno, Jr., have not appealed. The appeal of codefendant Fred Alex Rivera was heretofore dismissed.

## FACTS

By Count I of the indictment, defendant was charged with having conspired with the other codefendants to wilfully and unlawfully furnish and give a narcotic (marijuana) to two minors named Doris Mabbitt and Bonnie Fordham. Eleven overt acts were charged, including meeting with the minors March 26, 1960, taking the minors on March 27, 1960, to Rivera's home and to Lake Matthews and then and there making marijuana cigarettes and giving same to said minors and all smoking same, taking the minors again to Rivera's home. By Count IV of the indictment, defendant was charged with unlawful possession of marijuana. Counts II, III, V and VI of the indictment each charged possession against one of the other defendants.

The record shows the events substantially as follows: On March 26, 1960, the two minor girls, age 14 and 16, were "picked up" by codefendants Swanson and Rivera at the Riverside Bus Depot. The four drove into the hills and drank beer. Early next morning, March 27, Swanson took the girls home. On the afternoon of March 27, the minors riding with Swanson again, met with all defendants and all except Rivera drove to Lake Matthews in Moreno's car. There Sanchez obtained a paper bag containing a substance that looked like finely chopped grass and also little round balls or seeds. The defendants variously referred to it as "weed," "pot," "pot and seed." Sanchez told Bonnie he was going to tell about her smoking marijuana. Sanchez and Meza rolled cigarettes from this substance, lit one and passed it around; all smoked these cigarettes. Both girls were induced to smoke the cigarettes. The cigarettes smelled like garbage, old rags or trash burning. When they had smoked, the girls described their feelings by the terminology "high," "dizzy," "funny," "not right," "real funny," "like I want to fly," "I just felt good." They said the smell was different from ordinary cigarettes. (Both had smoked tobacco cigarettes before.)

The evidence here digresses into details of heroin injections given to Doris by Rivera and Swanson, a jointly tried case. Such evidence was not received as against Sanchez.

Two experts testified that in their opinion the substance in the said cigarettes was marijuana. Their qualifying testimony showed many years of observation, study and training. The

620

court's ruling on qualification was correct. Two physicians testified to the character of symptoms in identifying narcotics used by the girls. Defendant admitted knowledge of marijuana, its appearance and smell. He admitted taking the girls to Lake Matthews with the other defendants but denied use of marijuana there by any of the party. However, on cross-examination, defendant admitted writing a note to Swanson in jail advising Swanson regarding testimony Swanson should give to "unhook" Meza, Moreno and this defendant, suggesting to Swanson that "you will only get possession, no conspiracy and no furnishing." The note also said "all you did was smoke it with the Pomona studs but not furnish or conspire to the crime." Swanson admitted that he took the girls to Lake Matthews at about 2:30 a. m. Sunday morning, where marijuana was furnished by a man from Pomona; that he, Swanson, took a few puffs; that he was not sure if the girls smoked any; that he took the girls home at about 6:30 a. m. He also testified to a continuous succession of events occurring after Sunday, August 28 that related to other charges. The testimony of each of the various defendants was, in material respects, substantially inconsistent with that of Sanchez.

### Sufficiency of Evidence

■ "The gist of the offense of conspiracy is the formation of a combination with others to do some unlawful act or some lawful act by unlawful means." (*People* v. *Theodore,* 121 Cal.App.2d 17, 23 [2] [262 P.2d 630].) See also *People* v. *Sorrentino,* 146 Cal.App.2d 149, 153 [2] [303 P.2d 859]; *People* v. *Augusto,* 193 Cal.App.2d 253, 256 [1] [14 Cal. Rptr. 284].

■ "Conspiracy may be established by circumstantial evidence, including evidence of the acts of defendants in consummating their common purpose in violation of the statute." (*People* v. *Augusto, supra,* p. 256 [2], and authorities there cited.)

■ The conspiracy may be by express agreement or it may be by tacit mutual understanding. (*People* v. *Sagehorn,* 140 Cal.App.2d 138, 146 [2-3] [294 P.2d 1062]; *People* v. *Buckman,* 186 Cal.App.2d 38, 48 [9] [8 Cal.Rptr. 765]; *People* v. *Comstock,* 147 Cal.App.2d 287, 294, [4-5] [305 P.2d 228]; *People* v. *McManis,* 122 Cal.App.2d 891, 900 [8-9] [266 P.2d 134].)

■ The whole program of taking the girls to Lake Matthews in the midnight hours, the drinking, the retrieving

of the marijuana by Sanchez from a known place, the rolling of the cigarettes, the "passing around" and other details, as testified to by the girls and the partial corroboration and denials of defendants were such as to support the jury's implied finding that defendant was acting in concert with the other defendants on an agreement to furnish marijuana to the two minor girls.

## MINORS NOT ACCOMPLICES

[█] Defendant next contends that the minors were accomplices and that corroboration was required. We find no merit in this contention. The minors involved were the very persons the statute was designed to protect. They could not be found guilty of the offense of furnishing marijuana to themselves. (*People* v. *Poindexter,* 51 Cal.2d 142, 149 [8-9] [330 P.2d 763] ; *People* v. *De Paula,* 43 Cal.2d 643, 647 [276 P.2d 600] ; *People* v. *Brown,* 184 Cal.App.2d 588, 597 [12] [7 Cal.Rptr. 717] ; *People* v. *Flynn,* 166 Cal.App.2d 501, 513 [12] [333 P.2d 37].)

## CORROBORATION

█ However, substantial corroboration is in the record. Defendant's inconsistent statements to Officer Colvin, his fabrications regarding where they went and what they did, his note to Swanson, all show a consciousness of guilt and are sufficient corroboration, if necessary. █ "The evidence required by the section in question may be sufficient, even though slight and entitled to but little consideration when standing alone." (*People* v. *Spivak,* 166 Cal.App.2d 796, 810 [6] [334 P.2d 44]. See also Penal Code section 1111; *People* v. *Osslo,* 50 Cal.2d 75, 93 [4] [323 P.2d 397] ; *People* v. *Weiss,* 50 Cal.2d 535, 554 [6] [327 P.2d 527] ; *People* v. *Caruso,* 174 Cal.App.2d 624, 640 [18] [345 P.2d 282] ; *People* v. *Smith,* 184 Cal.App.2d 606, 610 [5] [7 Cal.Rptr. 607].

## PHYSICAL PRODUCTION OF NARCOTIC NOT VITALLY NECESSARY

█ Defendant seems to place some reliance on lack of physical production of the marijuana. Physical production is of course highly desirable, but expert opinions from symptoms is receivable. Proof may be had by circumstantial evidence. Here a full description of symptoms by the medical doctors and the girls and the opinions of two experts plus all the surrounding circumstances was sufficient to warrant the jury's finding. As was said in *People* v. *Tipton,* 124 Cal. App.2d 213, 217 [3] [268 P.2d 196] ;

''The prosecution need not physically produce the narcotic. It may prove that the substance was a narcotic by the testimony of the user and by the testimony of a doctor that, in his opinion, the substance used was a narcotic.'' See also (*People* v. *Cullen,* 37 Cal.2d 614, 624 [2] [234 P.2d 1]; *People* v. *Patterson,* 169 Cal.App.2d 179, 184-186 [2-3] [337 P.2d 163]; *People* v. *Mack,* 169 Cal.App.2d 825, 831 [11] [338 P.2d 25]; *People* v. *Flynn, supra,* p. 509 [1-6]; *People* v. *Candalaria,* 121 Cal.App.2d 686, 689 [1] [264 P.2d 71].

Upon appeal we addressed an inquiry to defendants' trial counsel inquiring of him regarding possible error. He responded that he knew of none. The Attorney General has filed an exhaustive analysis of the case and finds no error. We have examined the entire record and we find no prejudicial error. It appears that defendant had a full and fair trial.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.