Filed 5/8/15  P. v. Ellsworth CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C076034 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 09F2726, 10F7914, 11F4140) |
| v. | |
| CHERYLE ANN ELLSWORTH, | |
| Defendant and Appellant. | |

Defendant Cheryle Ann Ellsworth pleaded no contest to financial elder abuse, grand theft, and two failures to appear in court.  She now appeals, contending the trial court erred in failing to stay her sentence for grand theft pursuant to Penal Code section 654.[1]  Alternatively, she argues that the trial court abused its discretion in imposing consecutive rather than concurrent sentences and in failing to consider a split sentence. We conclude the trial court did not err and affirm the judgment.

---

[1] Undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

*The 2009 and 2010 Charges*

On April 3, 2009, defendant was charged in case No. 09-F2726 (the 2009 case) with theft or embezzlement of money or property of a value in excess of $400 from an elder between May 1, 2008 and August 30, 2008 (§ 368, subd. (d); count one); second degree commercial burglary (§ 459; count two); grand theft of personal property--checks (§ 487, subd. (a); count three); identity theft (§ 530.5, subd. (a); count four); forgery (§ 470, subd. (a); count five); and fraudulent use of an access card (§ 484g; count six). Defendant was also alleged to have served a prior prison term within five years of the current offense. (§ 667.5, subd. (b).)

On October 18, 2010, defendant failed to appear in court for the 2009 case and was charged in case No. 10-F7914 (the 2010 case) with that violation. (§ 1320 subd. (b).) It was also alleged defendant was released on bail or her own recognizance when she failed to appear. (§ 12022.1.)

*The Plea Agreement*

On June 2, 2011, defendant pleaded guilty to two counts and an enhancement from the 2009 case. Specifically, she pleaded guilty to theft from an elder (count one), grand theft (count three), and admitted the prior prison term enhancement. In the same plea agreement, she also pleaded guilty to failure to appear and admitted the enhancement allegation in the 2010 case. In exchange for this plea, the other counts charged in the 2009 case were dismissed and another criminal case was dismissed. Defendant did not execute a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754 relative to this plea.

*The Stipulated Facts*

The stipulated factual basis for the plea in the 2009 case was as follows. Defendant is married to, but separated from, Kenneth Ellsworth. In September 2007, after their separation, Kenneth moved in with his mother, Billie Ellsworth, in Shasta County and filed a change of address with the United States Postal Service to reflect his

2

move.[2]  Approximately one week later, defendant filed a new change of address for Kenneth, falsely stating that his address was in Lancaster.  This change of address apparently caused not only Kenneth's but also some of Billie's mail to be redirected to the Lancaster address.  Indeed, in January 2008, Billie learned someone had cashed a blank Capital One courtesy check sent to her in the mail in the amount of $400, and Billie suspected defendant was responsible.  Capital One investigated the incident as fraud and resolved and closed the case.  In June 2008, Billie learned an American Express card had been issued in her name and was to be sent to an address in Lancaster where defendant was living; defendant later admitted she applied for the credit card in Billie's name.  Billie was able to cancel the American Express card before it was used.  However, defendant successfully obtained a Discover card issued in Billie's name, which defendant used repeatedly between May and August 2008.  Defendant made charges against the Discover card in the amount of $2,413.20.

*The 2011 Charges*

On July 7, 2011, defendant failed to appear for sentencing in the 2009 case, and was charged in case No. 11-F4140 (the 2011 case) with failure to appear (§ 1320, subd. (b)); it was also alleged she was released on bail or her own recognizance at the time (§ 12022.1).  On February 5, 2014, defendant pleaded guilty to the failure to appear charged in the 2011 case in exchange for (1) a promise not to file charges for her multiple other failures to appear in the 2009, 2010, and 2011 cases, and (2) referral for judgment and sentencing pursuant to section 1170, subdivision (h).  The trial court mentioned at the plea hearing that defendant would "be placed on some sort of split sentence.  It won't be probation, and there's no specific agreement as to any up-front custody time."

---

[2]  As defendant, her husband, and her mother-in-law share a common surname, we refer to her husband and mother-in-law by their first names.

3

Following her plea in the 2011 case, defendant successfully challenged the judge who had taken her plea in the 2009, 2010, and 2011 cases.

*Sentencing on the 2009, 2010 and 2011 Charges*

On March 6, 2014, defendant was sentenced by a different judge to an aggregate county jail term of eight years for all three cases.  For the 2009 case, she was sentenced to three years for theft or embezzlement of property from an elder, plus one year for the prior prison term enhancement, and a consecutive eight months (one-third the middle term of two years) for grand theft of personal property.  For the 2010 case, she was sentenced to an additional consecutive eight months (one-third the middle term) for failure to appear plus a consecutive two years for the sentencing enhancement.  And for the 2011 case, she was sentenced to an additional consecutive eight months (one-third the middle term) for failure to appear.  In imposing a consecutive term for the grand theft in the 2009 case, the trial court noted there was "a separate objective in that" and the court also noted the sentences for the 2010 and 2011 cases were imposed consecutively because they involved a "separate offense, separate date."

DISCUSSION

I

*Section 654*

Defendant contends the trial court should have stayed execution of her sentence for grand theft in the 2009 case, because the acts of grand theft and theft from an elder "were committed pursuant to a single intent and objective."  Specifically, defendant argues that both crimes sought "to rely on [Billie's] creditworthiness to extract funds for [defendant] to use for her own purposes."  Defendant's contention relies on an interpretation of the record that presumes the elder theft and grand theft were both committed in the four months between May and August of 2008, the same time period when defendant used the fraudulently obtained Discover card.

4

The People contend the trial court properly sentenced defendant to multiple punishments because the crimes were distinct, separated by time and intent, and committed against multiple victims. The People's interpretation of the record is that the elder theft is substantiated either by defendant writing a check for $400 against Billie's Capital One account or by fraudulently obtaining the Discover card, and that the grand theft is supported by defendant's use of the Discover card.

We disagree with both parties' interpretation of the record. Defendant's grand theft was completed in January of 2008 when she wrote the courtesy check against Billie's Capital One account. That act is separated in time (over three months) and objective from the elder theft, which she completed between May and August of 2008 by using the fraudulently obtained Discover card to acquire more than $2,000 in cash and goods.[3] For this reason, and because both crimes also involved separate criminal objectives, we conclude the trial court did not err in imposing multiple punishments.

"We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) In so doing, " 'we review the ruling, not the court's reasoning . . . .' " (*People v. Grimes* (2015) 60 Cal.4th 729, 755.) If substantial evidence supports the trial court's ruling, we will affirm it. (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1336-1337.)

---

[3] Because we reject defendant's interpretation of the record that both the grand theft and elder theft were based on defendant's use of the Discover card between May and August 2008, her discussion of *People v. Bailey* (1961) 55 Cal.2d 514, at page 519 [a single intent and plan constitutes a single grand theft conviction where the defendant made a single affirmative representation to obtain welfare aid and cashed multiple checks issued to her as a result of that misrepresentation] and *People v. Kronemeyer* (1987) 189 Cal.App.3d 314, at pages 363-364 [a single grand theft conviction where, in the course of executing a single criminal plan, the defendant completed a series of transactions over a period of time to take all the assets from the victim's savings account] is irrelevant.

5

Section 654 bars multiple punishments for a single act that violates more than one criminal statute, and for multiple acts where those acts comprise an indivisible course of conduct incidental to a single criminal objective and intent. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208; *Neal v. State of California* (1960) 55 Cal.2d 11, 19.) " 'Whether a course of criminal conduct is divisible . . . depends on the intent and objective of the actor.' " (*People v. Beamon* (1973) 8 Cal.3d 625, 637.)

"[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) If, however, the defendant "entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Beamon, supra,* 8 Cal.3d at p. 639; see also *People v. Britt* (2004) 32 Cal.4th 944, 952; *People v. Lewis* (2008) 43 Cal.4th 415, 519.)

Moreover, and notably relevant here, " ' "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment. [Citations.]" [Citations.] This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken. [Citation.]' [Citation.]" (*People v. Andra* (2007) 156 Cal.App.4th 638, 640.)

Here, defendant pleaded guilty to grand theft arising from her use of a check that did not belong to her. According to the stipulated factual basis for defendant's plea, Billie suspected defendant had taken a courtesy check issued by Capital One in or before

6

January 2008, and used it for her own benefit.[4]  Defendant denied she had taken the

check based on her understanding that it was stolen from Billie's actual residence in

Redding. This is the only check, however, referred to in the report that constitutes the

factual basis for defendant's plea, and the grand theft charge specifically alleges the

personal property stolen was a check.  Having pleaded guilty to grand theft, with a

stipulated factual record that shows the theft involved a check that was used in January,

defendants' objections to the factual basis of her conviction are no longer material.  (see §

1237.5; see also *People v. Panizzon* (1996) 13 Cal.4th 68, 75 [" 'section 1237.5 does not

allow the reviewing court to hear the merits of issues going to the validity of the plea

unless the defendant has obtained a certificate of probable cause . . .' "].)

The date of the grand theft is somewhat difficult to discern because the

information incorrectly alleges that the check was stolen between May and August,

instead of the January date contained in the factual basis for the plea agreement.  But the

trial court was entitled to rely on the stipulated basis for the plea agreement and, absent a

showing that defendant was misled by the variance in the pleading when she entered her

guilty plea, the error does not diminish the effect of defendant's guilty plea to grand theft.

(*People v. Hellman* (1961) 189 Cal.App.2d 777, 779 ["A defendant will not be heard to

complain of a variance between the date of the crime as alleged and the date indicated by

the evidence unless it can be said that such variance misled him [or her] in making his [or

her] defense, or was such as would deprive him [or her] of the plea of former jeopardy in

the event of another trial for the same offense"]; see also *People v. Rice* (1887) 73 Cal.

---

[4]  The threshold amount to sustain a conviction for grand theft was "a value exceeding
four hundred dollars" at the time of defendant's criminal act.  The evidence indicates the
check was written in the amount of $400, which would not necessarily meet the threshold
amount.  But, by pleading guilty, defendant has admitted all the elements of the criminal
charge, including the threshold value.  (See *In re Basinger* (1988) 45 Cal.3d 1348, 1363
[a "guilty plea necessarily admits every element of the crime of grand theft…"].)

220, 221 [where evidence showed an offense was committed three months before the time stated in the information, the variance was immaterial]; *People v. Mack* (1959) 169 Cal.App.2d 825, 829-830.)

The criminal act that constituted the grand theft charged in count three was completed months before defendant fraudulently obtained or used the Discover card— the acts that constitute the elder theft charged in count one. Where the offenses are separated in such a way as to afford the defendant the opportunity to reflect and renew her intent before committing the next offense, separate punishment is permissible, even where the acts serve a single broad objective. (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935.)

In addition, we also conclude that separate objectives likely motivated defendant to fraudulently obtain and repeatedly use a credit card, as opposed to her decision to cash a single check likely mailed to her by accident. The "one intent and objective" test must be applied in a manner ensuring that a defendant's punishment is commensurate with her culpability. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211.) Here, though both crimes may have been motivated by a broad and generalized objective of obtaining money, they appear to have served distinct and separate narrower objectives. Cashing a courtesy check issued by a pre-existing credit line was a single opportunistic crime. Fraudulently obtaining and using a credit card based on defendant's knowledge of the victim's personal information was a carefully executed effort to obtain ongoing access to money and goods. These crimes have distinct intents and objectives and the trial court's decision to impose multiple punishments for these crimes was commensurate with defendant's culpability.

We conclude the trial court did not err in imposing multiple punishments for the grand theft and the elder theft.

## II

### *Consecutive Terms*

Defendant next contends the trial court abused its discretion in imposing consecutive terms based on its finding that the grand theft and elder theft were premised on separate objectives. Even assuming defendant did not forfeit this claim by failing to object in the trial court, the claim fails. (*People v. Scott* (1994) 9 Cal.4th 331, 352, 354, fn. 15; *People v. Bradley* (2012) 208 Cal.App.4th 64, 90 (*Bradley*).) Since the claim fails on its merits, defense counsel did not render ineffective assistance by failing to object to the restitution order in the trial court. (*Bradley*, at p. 90 ["Failure to raise a meritless objection is not ineffective assistance of counsel"].)

In imposing consecutive sentences a trial court may consider: (1) whether the "crimes and their objectives were predominantly independent of each other"; (2) whether the "crimes involved separate acts of violence or threats of violence"; and (3) whether the "crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Cal. Rules of Court, rule 4.425(a)(1)-(3).) Here, as discussed in detail above, defendant's acts comprising the grand theft and elder theft were not only committed at different times (January 2008 and May to August 2008), but the crimes and their objectives were separate and independent. Therefore, the trial court did not abuse its discretion in imposing consecutive sentences.

## III

### *Split Sentence*

Defendant contends the trial court abused its discretion by not considering a split sentence. Again, even assuming defendant did not forfeit this claim by not objecting in the trial court, the claim fails. (*People v. Scott, supra,* 9 Cal.4th at pp. 349-351, 353 [though a court is generally required to state its reasons for its discretionary sentencing choices on the record, a defendant cannot complain for the first time on appeal about the

court's failure to do so]; *Bradley, supra,* 208 Cal.App.4th at p. 90.)  Since the claim fails on its merits, defense counsel did not render ineffective assistance by not objecting in the trial court.  (*Bradley*, at p. 90 ["Failure to raise a meritless objection is not ineffective assistance of counsel"].)

Pursuant to section 1170, subdivision (h)(5), a trial court may impose either a straight jail commitment, or may suspend execution of a portion of the jail term, during which period the defendant would be placed on mandatory supervision by the probation department.  We review a trial court's discretionary sentencing choice for abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)  In the absence of a showing that the trial court's decision was " ' "clearly . . . irrational or arbitrary," ' " we presume it " ' "acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.]" (*Ibid.*)

Here, the sentencing judge indicated an intention to impose an eight-year term in accordance with the probation department's recommendation.  Defense counsel requested a split sentence, noting defendant was a caretaker for her elderly mother and another elderly gentleman and that her time in custody had taught her to comply with the terms of mandatory supervision.  Counsel did not inform the sentencing judge that the judge who heard defendant's plea had indicated a split sentence would be imposed.  The trial court found defendant presumptively ineligible for probation and acknowledged that she had multiple failures to appear and numerous prior convictions.  The trial court selected the middle term for each of defendant's offenses.

Though the trial court did not expressly address its discretionary ability to impose a split sentence, neither does the record reveal any erroneous belief about a lack of discretion, or indicate that the trial court's decision was " ' "clearly . . . irrational or arbitrary." ' " (*People v. Carmony, supra,* 33 Cal.4th at p. 376.)  Rather, it appears the trial court acknowledged defendant's request for a split sentence but deemed it

10

inappropriate in light of defendant's numerous felony convictions and her history of failing to appear as ordered by the court. Importantly, a split sentence was not listed as a term of defendant's plea. The parties merely agreed she would be referred for sentencing pursuant to section 1170, subdivision (h). On this record, the trial court did not abuse its discretion in declining to impose a split sentence pursuant to section 1170, subdivision (h)(5).

## DISPOSITION

The judgment is affirmed.


      RENNER      , J.


We concur:


 BLEASE     , Acting P. J.


 HULL     , J.